UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK COLLINS, INC.,

        Plaintiff,

v.

JOHN DOES 1-15,

        Defendants.
_____/

CASE NO. 1:12-CV-618

HON. ROBERT J. JONKER

## ORDER

On June 14, 2012, Plaintiff filed a Complaint against a number of unnamed, "John Doe" defendants, alleging that the defendants infringed its copyrights. The case is substantially similar to five cases filed by Malibu Media, Inc. on the same day and by the same counsel. After reviewing all six cases, the Court re-assigned all of them under the Court's cognate cases rule to a single Judge—the Judge randomly selected for the first-filed case. Each "John Doe" Defendant corresponds to an internet protocol ("IP") address that allegedly used a BitTorrent file-sharing protocol to illegally download and distribute Plaintiff's copyrighted movies. Plaintiff subsequently filed a Motion for Leave to Serve Third Party Subpoenas (docket # 4) on the "John Doe" Defendants' internet service providers ("ISPs") to ascertain the true identities of the individual or entity assigned to each IP address, comprising "the true name, address, telephone number, email address, and Media Access Control ("MAC") address of any such individual or entity." (docket # 4-3.)

On June 26, 2012, the Court entered an Order to Show Cause "as to why all but the first "John Doe" in each action should not be dismissed from the case without prejudice to Plaintiff's

ability to re-file complaints against the remaining defendants in separate actions." (docket # 5.) Specifically, the Court expressed concerns as to whether the "John Doe" defendants were part of "a common transaction or occurrence" that would support joinder under FED. R. CIV. P. 20(a). (*Id.*) On July 13, 2012, Plaintiff filed a Response in support of joinder in this case. (docket # 6.) After reviewing all matters of record, including Plaintiff's Complaint and Response, the Court concludes that joinder is improper and therefore **DROPS** all John Doe Defendants except for John Doe 1 under Fed. R. Civ. P. 21 without prejudice to Plaintiff's ability to re-file independent lawsuits against each dropped John Doe Defendant. The Court also **GRANTS** Plaintiff Motion for leave to serve third-party subpoenas on the ISP of John Doe 1 Defendant, and **DENIES** the Motion in all other respects.

## BACKGROUND

According to Plaintiff, its copyrighted work ("Work") that is the basis of this dispute was infringed through the "John Doe" Defendants' use of a BitTorrent file-sharing protocol. (docket # 1.) BitTorrent allows a user, commonly known as the "initial seeder," to create a "torrent" descriptor file using a software program that the user installed on his or her computer. (*Id.* at ¶ 19.) The user then breaks the torrent file into several component parts known as "pieces." (*Id.* at ¶ 22.) Each piece is assigned "a random and unique alphanumeric identifier known as a 'hash,'" with the hash being recorded within the torrent file. (*Id.* at ¶ 21.)

After a torrent file is created, the initial seeder uploads it onto a torrent site. Once uploaded, the BitTorrent protocol causes the initial seeder's computer to send different pieces of the torrent file to other peers seeking to download the file. (*Id.* at ¶ 29.) To verify the peer receives a portion of the desired torrent file, the BitTorrent protocol compares the piece's hash number to the unique hash number associated with the file. (*Id.* at ¶ 22.) If the hash numbers match, the piece is conclusively

determined to be a portion of the desired file. (*Id.* ("In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.").) Once a peer receives a piece of the file, the BitTorrent protocol enables transmission of this piece to other peers. (*Id.* at ¶ 31.) In this way, all of the peers and initial seeder form what is called a "swarm" to upload and download portions of the desired file. (*Id.* at ¶¶ 15, 33.) Each of these "nodes" in the swarm, however, operate independently and without necessarily having any knowledge or even awareness of the other nodes. "Swarms" can include thousands of individual nodes, each operating independently.

This independence has some advantages. In particular, traditional peer-to-peer filing sharing necessitates an end user downloading the entire uploaded file from a single source user. In contrast, BitTorrent protocol allows users to upload and download pieces of the file from any number of users. This distributes a large file over multiple, independent nodes, thus avoiding a heavy load on a single source computer and network.[1] "One initial seeder can create a torrent [file] that breaks a movie into hundreds or thousands of pieces saved in the form of a computer file," which can be distributed amongst hundreds or thousands of different users to reduce the data load on a particular peer. (*Id.* ¶ 34.) After a peer downloads all of the pieces comprising the full torrent file, the pieces are reassembled and the peer is able to view the movie in its entirety. (*Id.* ¶ 35.) Because of the decentralized and independent BitTorrent protocol, download speeds can be significantly improved.

In this case, Plaintiff alleges that the Works were combined into a single torrent file by a user (the Initial Seeder) and assigned the unique hash number of FB9554382F176C383BD70156F-

---

[1] A more comprehensive summary of the Bit Torrent protocol is provided in *Third Degree Films v. John Does 1–36*, 11-cv-15200 (E.D. Mich. May 29, 2012), and therefore need not be re-summarized here.

DC35D99EA14ADE1. (*Id.* ¶ 38.) According to Plaintiff, through the use of forensic software, it was able to isolate the IP addresses that downloaded any part of the file containing Plaintiff's Works based on this unique hash number and, presumably through the use of reverse-lookup technology, was able to determine which of the IP addresses at issue were located in this District.[2] Each "John Doe" is associated with one of these IP addresses. (*Id.* at ¶¶ 38, 39.) Plaintiff alleges that it will be able to demonstrate that "through each of the transactions, each of the [John Doe] Defendant's computers used their identified IP addresses . . . . in this District in order to transmit a full copy, or portion thereof, of a digital media file identified by the unique hash number." (*Id.* at ¶ 42.) Plaintiff's Complaint alleges that the infringement occurred from May 4, 2012 through May 21, 2012. (docket # 1-2.)

## ANALYSIS

**I.     Joinder**

Fed. R. Civ. P. 20(a)(2) allows the joinder of defendants if:

(A)   any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and

(B)   any question of law or fact common to all defendants will arise in the action.

"The purpose of [Rule 20] is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.  Single trials generally tend to lessen the delay, expense and inconvenience to all concerned." *Patrick Collins, Inc. v. John Does 1–21*, No. 11-15232, 2012 WL 1190840, at *6 (E.D. Mich. Apr. 5, 2012) (quoting *Mosley v. Gen. Motors Co.*,

---

[2] Plaintiff retained IPP, Limited to conduct the forensic investigation.  Based on Plaintiff's Complaint, it appears that IPP set up an "investigative server."  The IP tracking software registered the IP address of any user that downloaded or uploaded a portion of the torrent file from or to the investigative server, which formed the basis of this Complaint.

497 F.2d 1330, 1332 (8th Cir. 1974)); *see also Pasha v. Jones*, 82 F.3d 418, 420 (6th Cir. 1996) (holding that claims may be joined when "they assert any right to relief relating to or arising out of the same transaction or . . . series of transactions" and that "joinder is encouraged because it avoids multiple lawsuits involving similar or identical issues"). Rule 20(a)(2) embodies the Federal Rule's "impulse . . . toward entertaining the broadest possible scope of action consistent with fairness to parties." *Call of the Wild Movie v. Does 1–1,062*, 770 F. Supp. 2d 332, 339 (D.D.C. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1996) (internal quotations omitted)). Dismissal is not an appropriate remedy for misjoinder; rather, dropping or adding parties, and severing claims is the appropriate response. Fed. R. Civ. P. 21.

Neither the Sixth Circuit nor this District have addressed whether joinder is appropriate in cases against "John Doe" defendants that use BitTorrent to allegedly infringe copyrighted works. However, the issue has been heavily litigated in other Districts nationwide, with mixed results. Some courts agree with Plaintiff and hold that joinder is indeed proper in such cases. *See, e.g.*, *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239 (S.D.N.Y. 2012); *Nu Image, Inc. v. Does 1–3,932*, 2:11-cv-545, 2012 WL 646070 (M.D. Fla. Feb. 28, 2012); *Patrick Collins, Inc. v. John Does 1–33*, No. 11-cv-02163, 2012 WL 415424 (D. Colo. Feb. 8, 2012); *Donkeyball Movie, LLC v. Does 1–171*, 810 F. Supp. 2d 20 (D.D.C. 2011); *Voltage Pictures, LLC v. Vazquez*, No. 10-00873, 2011 WL 5006942 (D.D.C. Oct. 20, 2011); *Hard Drive Prods., Inc. v. Does 1–55*, 11-cv-2798, 2011 WL 4889094 (N.D. Ill. 2011); *Patrick Collins, Inc. v. Does 1–22*, No. 11-cv-1772, 2011 WL 5439005, (D. Md. Nov. 8, 2011); *Patrick Collins v. Does 1–2590*, No. C-11-2766, 2011 WL 4407172 (N.D. Cal. Sept. 22, 2011). Others reach the contrary conclusion, holding that joinder is improper due to a lack of a "common transaction or occurrence" between the various "John Doe" defendants. *See,*

*e.g.*, *Third Degree Films, Inc. v. Does 1–131*, 280 F.R.D. 493 (D. Ariz. 2012); *Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150 (N.D. Cal. 2011); *SBO Pictures, Inc. v. Does 1–3,036*, 11-cv-4220, 2011 WL 6002620 (N.D. Cal. Nov. 30, 2011); *IO Group, Inc. v. Does 1–435*, No. C-10-4382, 2011 WL 445043 (N.D. Cal. Feb. 3, 2011); *Elektra Entm't Group, Inc. v. Does 1–9*, No. 04-cv-2289, 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004). Even within each District, courts are oftentimes divided. *Compare Patrick Collins, Inc. v. John Does 1–21*, No. 11-15232, 2012 WL 1190840 (E.D. Mich. Apr. 5, 2012) (holding permissive joinder of 21 "John Doe" defendants was proper) *and Third Degree Films v. John Does 1–36*, No. 11-cv-15200, 2012 WL 2522151 (E.D. Mich. May 29, 2012) (same), *with Patrick Collins, Inc. v. John Does 1–23*, 11-cv-15231, 2012 WL 1019034 (E.D. Mich. Mar. 26, 2012) (holding that joinder of 23 "John Doe" defendants was improper).

After reviewing all matters of record, the Court concludes that joinder is improper. The alleged infringement involves 15 different IP addresses, multiple ISPs, and almost a month of internet activity. While Plaintiff alleges that all of the "John Doe" Defendants infringed the same Works from the same torrent file, it does not assert that the Defendants shared the file pieces with one another, or even how many other IP addresses operated within the swarm. Given that a torrent file can be broken into thousands of pieces and quickly distributed amongst any number of network users, the Court cannot conclude (nor does Plaintiff contend) that any John Doe Defendant shared a particular piece of the torrent file with another John Doe Defendant. A mere mathematical possibility that such sharing may have occurred is not a proper basis for joinder. As Judge Steeh noted in *Patrick Collins, Inc. v. John Does 1–23*, 11-cv-15231, 2011 WL 1019034, at *4 (E.D. Mich. Mar. 26, 2012),

> The nature of the BitTorrent protocol enables its users to share files in a relatively quick time frame, ranging from anywhere from fifteen minutes to a few hours. The absence of information concerning the number of total users in the swarm, coupled with the BitTorrent protocol's ability to quickly share files further demonstrates that it is implausible that any of the Doe defendants were simultaneously sharing pieces of plaintiff's Work. . . . The absence of any allegations that a particular user downloaded a piece of the Work from, or uploaded highlights the absence of any reason to conclude that the Doe defendants were engaged in the same transaction or series of transactions.

*Id.* (citing *Hard Drive Prods., Inc. v. Does 1–188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011); *Patrick Collins, Inc. v. John Does 1–54*, 2012 U.S. Dist. LEXIS 36232, at *14 (D. Ariz. Mar. 19, 2012)); *see also Third Degree Films*, 280 F.R.D. at 493; *Hard Drive Prods.*, 809 F. Supp. 2d at 1163; *SBO Pictures, Inc.*, 2011 WL 6002620; *IO Group, Inc.*, 2011 WL 445043. While the Rule 20(a)(2) permissive joinder rule is to be liberally construed, the Court does not believe it encompasses the "six degrees of separation" argument on which Plaintiff's theory relies; namely, that each infringer is at a minimum connected to every other infringer in the swarm through any number of upload/download transactions occurring between any number of users over an indeterminate amount of time.[3] Indeed, accepting such an argument would, in theory, provide a basis for joinder of each of the thousands of separate people likely associated with a particular swarm. This would lead to an entirely unmanageable case and actually defeat the underlying purpose of Rule 20.

In support of its position, Plaintiff primarily relies on the reasoning set forth in Magistrate Judge Randon's decision to permit joinder in *Patrick Collins, Inc. v. John Does 1–21*, 11-15232,

---

[3] In its Response, Plaintiff argues that the time period of infringement and number of users in the swarm is irrelevant for purposes of joinder analysis. (docket # 6, at 8–9 (citing *First Time Videos, LLC v. Does 1–95*, 11-3822, 2011 WL 4724882 (N.D. Cal. Oct. 7, 2011)). While proximity in time certainly is not required for joinder, and a large number of users does not necessarily preclude joinder, both facts are relevant when considering whether the "John Doe" Defendants are in fact sufficiently related to support joinder.

2012 WL 1190840 (E.D. Mich. Apr. 5, 2012). Magistrate Judge Randon concluded that the John Doe defendants in that case were all properly joined based on plaintiff's allegations regarding the operation of the "swarm" technology. The problem with the "swarm" basis of joinder, however, is that it fails to account for the decentralized, autonomous, and independent operation inherent in the very design of the BitTorrent protocol. Consider the example of a more traditional peer-to-peer file-sharing system, which were the subject of similar joinder disputes in the recent past. Under Plaintiff's approach, a copyright holder of a work could sue every individual that infringed its work in a single action, regardless of temporal proximity or whether a relationship existed between the infringers, so long as it could establish that the work was infringed by that user while using a particular peer-to-peer file-sharing network. Courts have repeatedly rejected this approach, reasoning that while all users infringed the same work, the allegedly common "transaction or occurrence" was so tenuous as to make joinder improper. *See, e.g.*, *Arista Records v. Does 1–9*, No. 07-cv-961, 2008 WL 2982265, at *8 (S.D. Ohio July 29, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."); *Arista v. Does 1–11*, No. 07-cv-2828, 2008 WL 4449444, at *4 (N.D. Ohio Nov. 3, 2008). While BitTorrent users are to a very limited extent "related" based on their activities within a single "swarm," the sheer number of nodes within the swarm and operational independence of each user presents the same problems that prevent joinder in peer-to-peer cases, and there is no basis to legally distinguish them under Rule 20(a)(2).

Because joinder is improper on this record, the Court *sua sponte* drops all but one of the "John Doe" Defendants under Fed. R. Civ. P. 21, without prejudice to Plaintiff's ability to file separate lawsuits against the dropped Defendants. Through discovery, Plaintiff may indeed be able

to demonstrate that one or more Defendants in fact uploaded or downloaded the Works from one another, and the Court does not preclude the possibility that consolidation of these separate actions for purposes of discovery or trial may be appropriate at a later date. But on the record before it, the Court cannot conclude that a sufficient relationship between the parties exists to proceed in a single action at this time.

**II.    ISP Subpoenas**

Under Fed. R. Civ. P. 26(d)(1), a plaintiff is generally precluded from conducting any discovery in advance of a Rule 26(f) conference. However, "for good cause, the Court may order discovery on any matter relevant to the subject matter involved in the action." Because the Court has not conducted a Rule 26(f) conference, Plaintiff seeks leave of the Court to serve subpoenas on the "John Doe" Defendants' ISPs under Fed. R. Civ. P. 45. Because the Court concludes joinder of "John Doe" Defendants is improper, the Court denies Plaintiff's subpoena request as to the John Doe Defendants that have been dropped from this action. As for the remaining John Doe Defendant, the Court believes Plaintiff has satisfied the requirements for pretrial discovery and the need for the requested subpoena, and therefore grants Plaintiff's Motion as to John Doe 1.

In cases such as the one before the Court alleging copyright infringement against John Doe Defendant, courts generally find "good cause" exists when the plaintiff (1) makes a prima facie showing of a claim of copyright infringement; (2) submits a discovery request to the Court; (3) establishes there is no alternative means to obtain the subpoenaed information; (4) demonstrates a central need for the subpoenaed information; and (5) shows the defendants whose information is at issue have a minimum expectation of privacy. *See, e.g.*, *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) (numerous citations omitted).

Plaintiff's complaint alleges that the IP address of each John Doe Defendant was used to download at least a portion of Plaintiff's copyrighted Works in violation of federal copyright law, and have articulated a sufficient factual basis to support this assertion. The information that is the subject of Plaintiff's subpoena is limited to the contact information of the individual or entity associated with each IP address identified in the Complaint, and there is no practicable means to obtain this information other than through the subpoena Plaintiff requests. Furthermore, the John Doe Defendant does not have a reasonable expectation in the subscriber information Plaintiff's proposed subpoena requests, because Defendant voluntarily provided this information to the third-party ISP that is subject to the subpoena. *See Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); *Third Degree Films*, 2012 WL 2522151, at *3. Accordingly, the Court will grant Plaintiff's Motion for a Subpoena as set forth in Plaintiff's Proposed Order as to the John Doe Defendant that remains a party to this action.

**ACCORDINGLY, IT IS ORDERED THAT** John Doe Defendants 2–15 are dropped as parties from this action without prejudice to Plaintiff's ability to file a separate Complaint against each John Doe Defendant.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Leave to Serve Third Party Subpoenas (docket # 1-2) is **GRANTED** as to John Doe 1, and **DENIED** in all other respects. The Court will issue a separate order incorporating the terms of the subpoena.

**IT IS SO ORDERED.**

Dated:   August 13, 2012          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  UNITED STATES DISTRICT JUDGE